ADOLPH C. STUCK, administrator *de bonis non, vs.* GEORGE
B. SCHUMM.

Bristol.    October 23, 1933. — March 20, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Trust,* Of personal property, Proceedings to enforce trust, Identity of
beneficiary, Termination. *Equity Jurisdiction,* Suit to enforce trust,
Laches. *Limitations, Statute of. Executor and Administrator. Interest.*

The right to maintain a suit in equity for an accounting of money held
in trust by one who, after the death of the beneficiary of the trust
intestate and previous to the enactment of St. 1934, c. 116, amending
G. L. (Ter. Ed.) c. 230, § 5, repudiated the trust, was in the adminis-
trator of the beneficiary's estate and not in his next of kin, so that
the repudiation did not start the period of limitation upon that right
running until the repudiation became known to the administrator;
knowledge thereof on the part of one of the next of kin was not suf-
ficient to start it running.

Where one entrusted money to another for investment and it was con-
templated by the parties that the trust should continue for a con-
siderable period, no definite time for its termination or for an account-
ing by the trustee being specified, that determination of the times for
distribution of the trust fund to the beneficiary should rest largely in
the discretion of the trustee and that the beneficiary should be under
no obligation to demand distribution at any particular times, the period
of limitation upon the beneficiary's right to maintain a suit in equity
against the trustee for an accounting of the trust fund did not start
running until the trustee, to the knowledge of the beneficiary, repudi-
ated the trust.

So long as the beneficiary of a trust is without knowledge of wrongdoing
on the part of the trustee and is not at fault in failing to discover it,
it cannot be said that he is guilty of laches to enforce his rights.

Although it appeared, in a suit in equity by an administrator for an
accounting of money held by the defendant in trust for the plaintiff's
intestate, that one of the next of kin of the intestate, after his death
and more than six years before the commencement of the suit, but
previous to the enactment of St. 1934, c. 116, amending G. L. (Ter.
Ed.) c. 230, § 5, had had notice that the defendant repudiated the
trust, the plaintiff was entitled to recover the full amount of the trust
fund; it was error to enter a final decree adjudging that such next of
kin was not entitled to recover his share of the trust fund and ordering
the defendant to pay the plaintiff, for the benefit of the other next
of kin, only the balance left after deducting the amount of that share
from the total amount of the trust fund.

Where it appeared, in a suit in equity for an accounting of money entrusted to the defendant for investment and invested by him, mingled with his own funds, that the amount of the profits made or the interest earned by the use of such money was not ascertainable, it was error to award the plaintiff interest to the time of the commencement of the suit at the rate of only four per cent; in the circumstances, the general rule should be applied and interest should be computed at the rate of six per cent, which is the rate chargeable for the use of money when the parties have not by agreement fixed a different rate.

BILL IN EQUITY, filed in the Superior Court on April 7, 1930, with a writ of summons and attachment dated February 27, 1930.

The suit was referred to a master. Material facts found by him are stated in the opinion. By order of *Hanify,* J., there were entered an interlocutory decree confirming the master's reports and the final decree described in the opinion. Both parties appealed from each decree.

The case was submitted on briefs.

*G. B. Goodman,* for the plaintiff.

*F. Vera & A. P. Doyle,* for the defendant.

DONAHUE, J. Anna M. Stuck died intestate on September 15, 1921, leaving a husband and three children. An administrator of her estate was appointed on October 7, 1921. He resigned on December 14, 1929, and on January 24, 1930, the plaintiff, a son of the intestate, was appointed administrator of her goods and estate not already administered. Shortly afterwards he brought this bill in equity in the Superior Court praying for an accounting by the defendant of property held by him in trust for the intestate, for the conveyance of any real estate appearing of record in his name as trustee for her and for damages to the estate from the failure and refusal of the defendant to turn over property held by him in trust for the intestate. The defendant denied substantially all allegations of the bill and pleaded the statute of frauds, the statute of limitations, laches on the part of the plaintiff and that the estate had been duly administered and closed.

The case was heard by a master and upon the confirmation of his report a final decree was entered for the plaintiff. Both parties appealed from the interlocutory decree confirm-

ing the report and from the final decree. There were
matters open to the parties on the pleadings and in issue at
the trial before the master and at the hearing before the
judge on the entry of the decrees appealed from, which
have not been argued before us. We treat such matters as
waived. The contentions argued before us by the defend-
ant were that the statute of limitations was a bar to the
plaintiff's claim and that the plaintiff was guilty of laches.
The plaintiff contended that the final decree was erroneous
in that the amount awarded should have been larger and
that a different rule for the computation of interest should
have been adopted.

The defendant lived in the family of the plaintiff's in-
testate, to whom he was not related, for many years prior
to her death. He was known to her children and to the
community as the intestate's brother. He had acquired a
dominating influence over all the members of the family.
He was employed at a large salary, had accumulated a
substantial sum of money and was an experienced and
shrewd investor in real estate and in real estate mortgages.
The members of the family were untrained and inexperi-
enced in business affairs. During a period of years prior to
her death the plaintiff's intestate from time to time handed
over to the defendant sums of money for investment.
These sums of money were accepted by the defendant not
as loans, but in trust for investment. The money was used
in making loans and purchases represented by mortgages
and deeds taken in his name as trustee for her. The master
was unable to find that the plaintiff's intestate furnished
the entire consideration for any one purchase or loan, or
what amount of her money was used in any one of the
purchases or loans. He did find that the defendant's own
money furnished the greater part of the consideration for
such purchases and loans.

Shortly after the death of the plaintiff's intestate the
defendant brought the heirs to a lawyer in active practice
in New Bedford, where all the parties lived, and directed
them in the choice of that lawyer as their attorney and as
administrator of the estate. That lawyer had never repre-

sented any of the family but had acted as attorney for the
defendant, was intimate with him and had, prior to the
death of the plaintiff's intestate, borrowed from him large
sums of money. The defendant had in his possession and
delivered to the lawyer bank books of the plaintiff's intes-
tate representing deposits aggregating $1,059. By agree-
ment of the heirs the lawyer was appointed administrator
of the estate and the defendant became a surety on his
probate bond. The inventory when filed made no mention
of any claim against the defendant.

At or about the time of the death of the plaintiff's in-
testate the heirs knew that the defendant had funds belong-
ing to their mother but they did not know how much had
been given him or how it was invested. A few days before
the lawyer was appointed administrator the heirs asked
him about the money in the hands of the defendant. On
the question of laches only the master admitted testimony
that the lawyer told them that the defendant would make
distribution of those funds but that the defendant had
said that it would take five years before he could liquidate
the investments. About a year after the death of the
plaintiff's intestate one of the heirs, her son Adolph, asked
the defendant Schumm "for his share of his mother's
money and Schumm denied having any money, and shut
the door in his face."

In 1923 the heirs employed another attorney to bring
a petition for distribution and a decree was entered ordering
distribution of the estate, which consisted of the proceeds
of the bank books which had been delivered to the ad-
ministrator. He made payments in accordance with the
decree to two of the heirs, but not to the other two, and in
1924 they brought a petition for leave to sue on the ad-
ministrator's bond. It does not appear that such suit
was ever brought. In February, 1924, the lawyer who
was appointed administrator of the estate of the plaintiff's
intestate and was still serving in that capacity, on the
complaint of the defendant was indicted for larceny of
money of the defendant and was tried, found guilty and
sentenced to State prison where he remained until January,

1929, when he was paroled and later received a full pardon. The money which was the subject of the larceny was not connected with the trust fund which is the subject of the present suit. From the time of his appointment until his resignation as well as during the period of his confinement the administrator was for substantial periods of time not in New Bedford. While there he gave little time to his practice and the master found that he was very inaccessible to the heirs of the intestate until 1930.

The finding of the master that money to the amount of $5,265 had been paid by the plaintiff's intestate and received by the defendant not as a loan but in trust for investment by him established an express trust in personal property. *Jameson* v. *Hayes*, 250 Mass. 302, 307, 309, and cases cited. "Express trusts in personal property may be created and proved by parol; and the statute of limitations does not begin to run, in favor of a trustee against his *cestui que trust*, till the trustee has repudiated the trust, and knowledge of the repudiation has come home to the *cestui que trust.*" *Davis* v. *Coburn*, 128 Mass. 377, 380. A repudiation by the trustee must be open and notorious in order to start the operation of the statute. *Amory* v. *Amherst College*, 229 Mass. 374, 386. *St. Paul's Church* v. *Attorney General*, 164 Mass. 188, 199. *Currier* v. *Studley*, 159 Mass. 17, 20.

The plaintiff's intestate was the sole beneficiary under the trust on which the defendant held her money. She died intestate and her husband or her children had no title to the personal property left by her until her estate was settled. *Lowell* v. *Hudson*, 268 Mass. 574, 577. The title to such property vested in her administrator and he alone had the right to bring an action for its recovery. *Hobbs* v. *Cunningham*, 273 Mass. 529, 534. *Moulton* v. *Commissioner of Corporations & Taxation*, 243 Mass. 129, 131. *Flynn* v. *Flynn*, 183 Mass. 365. G. L. c. 230, § 5, permitted a creditor or legatee having an interest in the enforcement of a claim in favor of an estate to bring a suit in equity for the benefit of the estate where the executor or administrator refused to do so. An heir was not

given such a right until the passage of St. 1934, c. 116, amending G. L. (Ter. Ed.) c. 230, § 5, after this suit was brought. It was to the administrator and not to the heirs of the plaintiff's intestate that the defendant after her death owed the duty to account for the trust fund. A repudiation of the trust by the defendant would not start the running of the statute of limitations until his disavowal had become known to the administrator, who after the death of the intestate occupied with relation to the trustee the position of beneficiary.

The defendant in his answer and at the trial contended that he held no money in trust for the plaintiff's intestate and naturally did not testify as to a repudiation of a trust whose existence he flatly denied. He now contends, however, that the request of the son Adolph "for his share of his mother's money" and the defendant's denial that he had any money amounted to such a repudiation of his trust as would set the statute of limitations in operation. Even if we should assume that what was said and done could be found to be an unequivocal assertion by the defendant that he was then and there disavowing the trust obligation and announcing that thereafterwards he would hold the trust funds adversely to the beneficiary, no such statement made only to the son Adolph could have that effect. The status of Adolph was simply that of an heir with no title to the trust fund and no right to bring an action to recover any part of it. The trustee's obligation to account was owed to the administrator, and the trustee was under no duty and had no right to pay the son anything. An oral repudiation of a trust sufficient to result by operation of the statute in freeing a trustee from all liability to account for trust funds must be open, definite and made to or brought to the attention of a person who has the right to institute proceedings for the recovery of the funds. The statement of the defendant trustee that he had no money or his refusal to pay over a part of a trust fund for which in its entirety he must account to the administrator, in response to the request for payment made by one who had no right to make it or to compel payment,

was not such a repudiation as to start the running of the statute. The defendant relies on *Amory* v. *Amherst College,* 229 Mass. 374, 389, in support of his contention that this was an adequate repudiation of the trust. In that case the facts were materially different. There a formal demand was made on the trustee by an authorized agent of each of the beneficiaries under the trust and the trustee gave notice to the agent that no demand would be complied with, at least without litigation.

There is nothing in the record to warrant the inference that the conversation between Adolph and the defendant was brought to the knowledge of the administrator. There appears no refusal by the defendant to pay over trust money to the administrator on demand, for no such demand was made. In the arrangement under which the intestate paid her money and the defendant received it there was no time fixed when the trust should terminate, when any repayment was to be made to her by the trustee or under what conditions or when an accounting was to be made. Their relationship was close, they lived as members of one family and it is manifest that she had great confidence in him. He was versed in business affairs and she was not. It was left to him to determine how and when her funds mingled with his own should be invested and reinvested. He chose to invest the mingled moneys in real estate and in real estate mortgages, types of investment where ordinarily moneys are allowed to stay for some length of time. It is manifest that it was within the contemplation of the parties that the trust should continue for some considerable period, that there was no obligation on her to demand repayment at any particular or definite time or times and that the time of distribution of the trust fund or any part of it should rest largely on the judgment of the defendant, who made the investments. Under such a trust arrangement the failure of the beneficiary to demand the funds is not significant and the statute of limitations is not applicable until and unless the trust is terminated by the defendant by adequate repudiation through speech or conduct. *Pierce* v. *Perry,* 189 Mass. 332, 336.

*Schmidt* v. *Schmidt*, 216 Mass. 572, 577. *McGuire* v. *Devlin*, 158 Mass. 63, 67. *Campbell* v. *Whoriskey*, 170 Mass. 63.

There is nothing in the record to show that after the death of the plaintiff's intestate any new or different arrangement was made with the administrator for the holding of the trust funds. For some years at least, it would appear that the defendant continued to deal with the trust funds and the management of investments in much the same manner as he did in the life time of the intestate. Until 1927 he continued to hold title to parcels of real estate in his name as "Trustee" for her. We see no basis for a finding that there was earlier any conduct on his part indicating that he had disavowed the trust and was holding the trust fund adversely to the beneficiary. On all the evidence we think that the inference was warranted that the defendant after the death of the intestate continued to hold the trust fund under the original arrangement and that there was no repudiation of the trust brought to the knowledge of the beneficiary which would make the statute a bar to the present action.

There is no laches on the part of a beneficiary so long as he has no knowledge of a wrongful act of his trustee and no fault in not discovering the wrong. *O'Brien* v. *O'Brien*, 238 Mass. 403, 411. We think that on all the facts appearing the inference is warranted that this was the situation in the present case. Nor may an inference be reasonably drawn that delay in bringing an action was prejudicial to the trustee. *Calkins* v. *Wire Hardware Co.* 267 Mass. 52, 69. *Mascari* v. *Mascari*, 255 Mass. 92, 98. *Alvord* v. *Bicknell*, 280 Mass. 567, 572. The facts found do not indicate that the defendant was any more at a disadvantage because the bill in equity was filed when it was, than if action had been brought the day after the original administrator was appointed.

The master found that the defendant received from the plaintiff's intestate $5,265 for which the defendant would be bound to account to her if she were living. The decree citing, and apparently relying on, G. L. c. 260, § 2, and c. 230, § 5, declares that Adolph C. Stuck as an individual

was not entitled to recover his share of the trust money due the estate from the defendant and that his share, stated to be $1,170, must be deducted from the total amount of $5,265 due from the defendant. The decree orders the defendant to pay the difference, $4,095, to the plaintiff for the benefit of the intestate's heirs other than Adolph C. Stuck. As earlier pointed out, while G. L. c. 230, § 5, permitted a creditor or legatee having an interest in a claim in favor of an estate, which an executor or administrator refuses to prosecute, to bring a suit in equity for the benefit of the estate, not until 1934 was such right given to an heir. Since Adolph as an individual heir had no right to maintain an action against the defendant the statute of limitations did not run against him. He as an individual had no enforceable claim against the defendant and he is not in his individual capacity here a party. The plaintiff is the only person entitled to an accounting from the defendant and the fund in its entirety must be paid to him. When paid it will be an asset of the estate and its distribution in accordance with the statutes governing intestate estates is within the sole jurisdiction of the Probate Court. The fund cannot be divided and allocated by decree of the Superior Court. It follows that the decree must be modified by ordering that the sum of $5,265 with interest be paid to the plaintiff.

The master, who examined all the deeds and mortgages taken by the defendant and his bank accounts, computed interest on the amount found due at the rate of six per cent from September 15, 1921, the date of the intestate's death, to October 15, 1932. The final decree computed interest from the same date, September 15, 1921, to April 7, 1930, at the rate of four per cent. The money of the intestate was received by the defendant for investment, and was invested by him, mingled with his own funds. The amount of profits made or the interest actually earned by the use of the money of the intestate was not found by the master and from his other findings would not seem to be ascertainable. In these circumstances we think that the general rule should be applied and that interest should

be computed at the rate of six per cent, which is the rate chargeable for the use of money when the parties have not by agreement fixed a different rate. *Parker* v. *Nickerson,* 137 Mass. 487, 495–496. *Forbes* v. *Ware,* 172 Mass. 306, 310.

The final decree is reversed and a new decree is to be entered ordering the defendant to pay to the plaintiff the sum of $5,265 with interest computed at the rate of six per cent per annum, and with costs including costs on this appeal.

*Ordered accordingly.*