SEARS PETROLEUM & TRANSPORT CORP., Plaintiff,

Donald R. Lassman, Chapter 7 Trustee of the Estate of George F. Burgess, Intervenor,

v.

BURGESS CONSTRUCTION SERVICES, INC., George F. Burgess, Gregory Burgess, as Administrator/Executor of the Estate of Anne M. Burgess, Defendants.

No. CIV.A. 00–10674–RBC.

United States District Court, D. Massachusetts.

March 6, 2006.

M. Ellen Carpenter, Roach & Carpenter, P.C., Boston, MA, for Donald R. Lassman, Intervenor Plaintiff.

Joseph J. Coppola, Norwell, MA, for Sears Petroleum and Transport Corp., Plaintiff.

Scott J. Fishman, Jennings, Jennings, & Fishman, Weymouth, MA, for Gregory Burgess, Defendant.

Richard A. Freedman, Newman & Newman, P.C., Boston, MA, for Anne M. Burgess, Defendant.

Brian J Hughes, Jackson & Coppola PC, Assinippi Commons, Norwell, MA, for Sears Petroleum and Transport Corp., Plaintiff.

Donald H. Jackson, Jr., Assinippi Commons, Norwell, MA, for Sears Petroleum and Transport Corp., Plaintiff.

Raymond D. Jennings, III, Jennings, Jennings & Fishman, Weymouth, MA, for Gregory Burgess, Defendant.

Robert G. Najarian, Jr., Attorney at Law, Hingham, MA, for Sears Petroleum and Transport Corp., Plaintiff.

Eve A Pimonte–Stacey, Roach & Carpenter, P.C., Boston, MA, for Donald R. Lassman, Intervenor Plaintiff.

Howard I. Rosen, Newman & Newman, Boston, MA, for George F. Burgess, Burgess Construction Services, Inc., Anne M. Burgess, Defendants.

## OPINION[1]

## ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS ISSUES (# 143)

ROBERT B. COLLINGS, United States Magistrate Judge.

### I. INTRODUCTION

In this action, Sears Petroleum & Transport Corporation ("Sears" or the "plaintiff") originally brought suit against Burgess Construction Services, Inc. ("Burgess Construction"), George F. Burgess ("Burgess" or the "debtor"), Anne M. Burgess a/k/a Anne Love Burgess ("Anne") and Rockland Trust Company ("Rockland Trust") to recover on a judgment for breach of contract, to reach and apply assets and for injunctive relief. During the pendency of this case, Burgess filed for bankruptcy protection and then both Burgess and Anne died. The Chapter 7 Trustee of the Estate of Burgess, Donald R. Lassman (the "Trustee"), moved to intervene in this matter since he had a similar matter pending in the bankruptcy court. Leave for the Trustee to intervene was allowed. Consequently, the Trustee is an Intervenor and the current defendants are Burgess Construction, Burgess and Gregory Burgess as Administrator/Executor of the Estate of Anne M. Burgess ("Gregory Burgess" or the "defendant")(collectively, the "defendants"). Both the plaintiff and the Trustee are seeking to recover certain allegedly fraudulent conveyances made by Burgess to Anne.

On September 28, 2005, Gregory Burgess filed the instant motion for summary judgment, along with a supporting Memorandum of Law and Statement of Material Facts, asserting that several of the claims of the plaintiff and/or the Trustee are barred by the statute of limitations. (# # 143, 144, 145) In response, on October 28, 2005, Sears filed an Opposition to Defendant's Motion for Partial Summary Judgment on Limitations Issues (# 148), and similarly, on October 31, 2005, the Trustee filed an Opposition to Defendant's Motion for Partial Summary Judgment on Statute of Limitations Issues (# 149). On November 7, 2005, the defendant filed a Reply Brief of Defendant in Response to the Trustees [sic] Opposition to Defendant's Motion for Summary Judgment on Statute of Limitations Issues (# 151). Then, at the Court's request, on November 22, 2005, the Trustee filed a Memorandum of Law on Standing of Sears Petroleum to Pursue Causes of Action for Fraudulent Conveyances of Funds (# 159) and a Supplemental Brief with Regard to the Statute of Limitations on the Resulting Trust Count (# 160). On November 29, 2005, Sears, with the Court's permission, filed a Reply to Trustee's Memorandum on Limitations Issues (# 165). On December 5, 2005, the Court held a hearing and heard argument from the parties regarding the motion for summary judgment. Thus, the motion is now in a posture for resolution. For the reasons set forth below, the Court shall has denied in part and allowed in part the motion for summary judgment.

### II. FACTUAL BACKGROUND

By deed dated July 30, 1962, Burgess and Anne took title to a residential property located at 104 South Pleasant Street, Hingham, Massachusetts (the "property"). (Verified Complaint # 1 ¶ 11) The property was the Burgess' marital property, and they lived there from 1962 until their deaths. (# 1 ¶ 11) On or about July 31,

---

1. The Court entered an Order on the motion (# 143) on February 24, 2006 indicating that an Opinion was to follow.

1962, the property was transferred by Burgess and Anne to the Pleasant Street Realty Trust, of which Burgess was the Trustee. (# 1 ¶ 12) On or about April 22, 1965, the property was conveyed by the Pleasant Street Realty Trust to Burgess and Anne, as tenants by the entirety. (# 1 ¶ 13) Immediately thereafter, by deed recorded on April 23, 1965, the property was conveyed to Anne solely. (# 1 ¶ 14)

During his lifetime, Burgess operated a number of contracting businesses, including "Burgess Steeplejacks" and "Burgess International." (Joint Pre–Trial Memorandum # 150 at 1) Burgess Construction was organized on August 9, 1993. (# 150 at 3) For the most part, Burgess did not keep any type of financial records or bank accounts for his business or personal use. (# 150 at 2) It was his practice to cash checks received from his contracting jobs at check cashing establishments, pay his workers in cash and keep the rest for himself. (# 150 at 2) Otherwise, he would deposit his business and personal checks into a checking account held solely in Anne's name. (# 150 at 3)

On or about November 26, 1993, Burgess (first doing business as Burgess International Ltd. Corp. and then as Burgess Construction) contracted with Sears to install two steel storage tank bottoms and provide other tank upgrades for a total contract amount of $326,000. (# 150 at 4) By letter dated March 25, 1995, Sears wrote to Burgess giving notice of breach of contract and of the resulting damages to Sears. (# 150 at 5)

Sears alleges that the funds of Burgess Construction were used for the personal benefit of Burgess and Anne. (# 1 ¶ 19) Sears was directed by Burgess to wire payment for services rendered by Burgess Construction to an account at Rockland Trust which Burgess referred to as the "Burgess Account." (# 1 ¶ 20) Sears believes that the account at Rockland Trust was in the name of Anne M. Burgess and that Burgess and Anne used this account to keep funds belonging to Burgess Construction away from Burgess Construction's creditors and as their own personal account. (# 1 ¶ 22)

On December 29, 1999, Sears recovered a judgment (the "judgment") for breach of contract against Burgess Construction and Burgess in the United States District Court for the Northern District of New York for the sum of $400,649.37, plus prejudgment interest in the amount of $162,262.98 for a total of $562,912.35. (# 1 ¶ 6) The defendants have never paid any part of the judgment. (# 1 ¶ 8) On April 6, 2000, Sears filed the instant action. (*See generally* # 1)

On December 15, 2000, Burgess d/b/a Burgess Construction filed a voluntary petition under Chapter 7 of the Bankruptcy Code. (Adversary Complaint # 144–2 ¶ 7) The Trustee was appointed immediately thereafter. (Joint Stipulation of Facts # 141 ¶ 24) In connection with the bankruptcy, Burgess was deposed and he testified *inter alia* that he never filed a federal or state tax return and never paid withholding taxes for the employees of his various businesses. (# 144–2 ¶ 21) He testified further that Anne never worked and earned only a *de minimus* income since 1960. (# 144–2 ¶ 22) Burgess was Anne's only source of financial support, was the sole contributor of household income and the sole source of funds used to maintain the property. (# 144–2 ¶¶ 24, 25) On a number of occasions, both before and after Burgess filed for bankruptcy, Burgess transferred his income to Anne, Anne deposited the funds into her accounts and used the funds to pay the expenses of maintaining the property and other household and living expenses. (# 144–2 ¶¶ 52, 53; # 150 at 5–6, 14)

On May 28, 2003 Burgess died and on June 6, 2004 Anne died. (*See* Suggestions of Death # # 109, 131) The Burgess' son, Fred, lived with his parents at the property until after Anne's death. (# 150 at 15)

## III.  DISCUSSION

### A.  Standard of Review

Summary judgment purports "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Podiatrist Ass'n, Inc. v. La Cruz Azul De Puerto Rico, Inc.,* 332 F.3d 6, 12 (1 Cir.2003) (citing *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1 Cir. 1990) (quoting Fed.R.Civ.P. 56 Advisory Committee's note)). The party moving for summary judgment bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top–Flite Golf Co.,* 335 F.3d 15, 19 (1 Cir.2003). After the moving party has met its burden, "the burden shifts to the summary judgment target [the nonmoving party] to demonstrate that a trialworthy issue exists." *Mulvihill,* 335 F.3d at 19 (citing *Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (1 Cir.2000)).

When considering whether to grant summary judgment, the Court must determine whether:

> ...the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c).

In making this assessment, the Court must "scrutinize the record in the light most flattering to the party opposing the motion, indulging all reasonable inferences in that party's favor." *Mulvihill,* 335 F.3d

at 19 (citing *Morris v. Gov't Development. Bank,* 27 F.3d 746, 748 (1 Cir.1994)); *see also Podiatrist Ass'n, Inc.,* 332 F.3d at 13; *Pure Distributors, Inc. v. Baker,* 285 F.3d 150, 152 (1 Cir.2002); *New England Regional Council of Carpenters v. Kinton,* 284 F.3d 9, 19 (1 Cir.2002) (citing *Dynamic Image Technologies, Inc. v. United States,* 221 F.3d 34, 39 (1 Cir.2000)); *Kearney v. Town of Wareham,* 316 F.3d 18, 22 (1 Cir.2002).

Despite this "notoriously liberal" standard, *Mulvihill,* 335 F.3d at 19, summary judgment cannot be construed as "a hollow threat." *Kearney,* 316 F.3d at 22. A factual dispute which is neither "genuine" nor "material" will not survive a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, in deciding whether a factual dispute is "genuine," the Court must determine whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Kearney,* 316 F.3d at 22 (citing *United States v. One Parcel of Real Prop. (Great Harbor Neck, New Shoreham, R.I.),* 960 F.2d 200, 204 (1 Cir.1992)); *Suarez,* 229 F.3d at 53 (citing *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1 Cir.1995)). In circumstances where submitting the issue in dispute to the jury amounts to "nothing more than an invitation to speculate," summary judgment is appropriate. *Feliciano de la Cruz v. El Conquistador Resort and Country Club,* 218 F.3d 1, 9 (1 Cir.2000) (quoting *Lattimore v. Polaroid Corp.,* 99 F.3d 456, 467–68 (1 Cir.1996)). In weighing whether a factual dispute is "material," the Court must examine the substantive law of the case, because "only disputes over the facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment."

*Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Kearney,* 316 F.3d at 22.

The focus at the summary judgment phase "'should be on the ultimate issue: whether, viewing the aggregate package of proof offered by the plaintiff and taking all inferences in the plaintiff's favor, the plaintiff has raised a genuine issue of fact...'." *Rivas Rosado v. Radio Shack, Inc.,* 312 F.3d 532, 535 (1 Cir.2002) (quoting *Dominguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 430–31 (1 Cir.2000)); *see also Leahy v. Raytheon Co.,* 315 F.3d 11, 16–17 (1 Cir.2002); *Suarez,* 229 F.3d at 53. The party objecting to summary judgment may not merely rest upon the statements put forth in its own pleadings. *See Gillen v. Fallon Ambulance Service, Inc.,* 283 F.3d 11, 26 (1 Cir.2002) (citing *Colantuoni v. Alfred Calcagni & Sons, Inc.,* 44 F.3d 1, 4–5 (1 Cir.1994) (a party objecting to summary judgment fails to put forth a genuine issue of material fact merely by filing an affidavit contradicting unambiguous answers contained in a prior deposition)). Instead, Rule 56(c):

> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## B. The Motion for Summary Judgment

In his motion for summary judgment, the defendant argues that three different claims are barred by the statute of limitations. First, he contends that the Trustee's resulting trust claims (# 144–2, Counts IV, V and VI) are time-barred. Second, he argues that Sears' claims that the property was fraudulently transferred from Burgess to Anne in 1965 (# 1, Count II) is barred by the statute of limitations. Finally, the defendant asserts that the claims of monetary transfers from Burgess to Anne between 12/15/98 and 12/15/2002 (# 144–2, Counts I, II and III)[2] belong to the Trustee exclusively and that Sears is precluded from recovery on those claims. For the reasons set out below, the Court has allowed in part and denied in part the defendant's motion.

### 1. The resulting trust claims

The Trustee alleges that as a consequence of the transfer of the property from Burgess to Anne, a resulting trust was created because Burgess intended that the benefit of the property inure to him, not to Anne. (# 144–2 ¶ 86) The Trustee further contends that Anne (or actually, Anne's estate) holds the property as trustee of a resulting trust for the benefit of Burgess and that Anne has not repudiated the resulting trust. (# 144–2 ¶¶ 72–73, 79–80, 87–88)

The defendant, however, argues that the six year statute of limitations for a resulting trust has expired because Anne, the trustee of the resulting trust, repudiated the existence of a resulting trust on November 26, 1996. (# 144 at 2) Specifically, the defendant explains that during a deposition in connection with a lawsuit against Burgess in Plymouth Superior Court, Anne testified that she believed that her son, Frederick, owned the property. (# 144 at 2) It is thus the defendant's position that Anne's testimony to this effect consti-

---

**2.** Sears' complaint does not contain a specific cause of action for fraudulent transfer of funds but seeks in its request for relief to recover monies held in Anne's name. (# 1, Request for Relief ¶¶ 3, 7, 8, 9)

tuted repudiation of the resulting trust and that the beneficiary of the resulting trust (i.e., Burgess) was on notice of the repudiation since Burgess' counsel was aware of Anne's testimony. (# 144 at 2–3) The Trustee takes issue with the defendant's stance, arguing that Anne's brief testimony could not be considered repudiation of the resulting trust. (# 149 at 3–4)

It is undisputed that the applicable statute of limitations on a resulting trust claim is six years. Mass. Gen. L. c. 260, § 2; *Stapleton v. Macchi*, 401 Mass. 725, 729, 519 N.E.2d 273, 276 (1988). The dispute here is whether Anne's testimony about ownership of the property is enough to constitute repudiation of the resulting trust such that summary judgment should enter in favor of the defendant.

■ The "statute of limitations [on a resulting trust claim] does not begin to run in favor of a trustee against a beneficiary until the trustee has repudiated the trust and knowledge of that repudiation has come home to the beneficiary." *Kearney v. Mechanics Nat'l Bank of Worcester*, 343 Mass. 699, 703, 180 N.E.2d 667, 670 (1962) (citations omitted). An "oral repudiation" of a resulting trust "must be open, definite and made or brought to the attention of a person who had the right to institute proceedings for the recovery of the funds." *Stuck v. Schumm*, 290 Mass. 159, 164, 194 N.E. 895, 899 (1935). Therefore, in the instant case, the two issues are whether Anne's testimony was "open and definite" and whether Burgess had notice of Anne's testimony to the effect that she thought that Frederick owned the property. Obviously, the defendant argues that the testimony was open and definite and that Burgess did have the requisite notice; the Trustee takes the opposite position.

The Court need not decide the issues definitively because it is well-established that whether a certain act constitutes repudiation is a question of fact for trial. *See All Saints Parish, Waccamaw v. Protestant Episcopal Church in the Diocese of South Carolina*, 358 S.C. 209, 234, 595 S.E.2d 253, 267 (2004), *reh'g denied* (Apr. 23, 2004), *cert. denied*, (July 8, 2005)(reversing the grant of summary judgment because there was a genuine issue of material fact as to whether the plaintiff repudiated the trust); *see also Demoulas v. Demoulas*, 1993 WL 818620, *11 (Mass.Super.Oct.4, 1993)(ruling that whether the statute of limitations on a resulting trust claim was tolled because the trustee did not repudiate the trust was a question of fact to be determined at trial); *Kay v. Village of Mundelein*, 36 Ill.App.3d 433, 438, 344 N.E.2d 29, 33 (1975)("Whether a given act is consistent with the continuance of the trust or indicates an intent to repudiate the trust and claim adversely, is a question of fact...."); *Davidson v. Stagg*, 94 Mont. 272, 22 P.2d 152, 155 (Mont.1933)(whether a certain act establishes a repudiation of a trust is a "fact issue for the consideration of the jury under proper instructions of the court."); *Randall v. Constans*, 33 Minn. 329, 338, 23 N.W. 530, 534 (1885) ("As respects the statute of limitations [on a resulting trust claim], or the effect of lapse of time, these are questions which will more properly arise upon the trial of the issues of fact.").

Thus, it is clear that whether Anne's testimony during her deposition was sufficient repudiation is a question of fact, not to be resolved at the current juncture by the Court. Therefore, summary judgment on the resulting trust claims in favor of the defendant is not appropriate and as such, the Court has denied summary judgment on such claims.[3]

3. The Court notes that the defendant did not cite any cases establishing that testimony like

### 2. *The 1965 transfer of the property*

The defendant argues that the statute of limitations on the allegedly fraudulent conveyance of the property in 1965 from Burgess to Anne expired in 1971. (# 144 at 4) He contends that under the Massachusetts Fraudulent Conveyance Act ("MFCA"), the applicable statute of limitations is the period applicable to the underlying action; in this case, it would be six years since the underlying action is a breach of contract action. (# 144 at 4)(citing Mass. Gen. L. c. 260, § 2) Moreover, says the defendant, there is no tolling of the statute of limitations on this fraudulent conveyance claim. (# 144 at 4)

In its opposition brief, Sears did not address the defendant's argument that the statute of limitations had run on the fraudulent conveyance of the property claim, and the defendant in his reply brief noted this fact and suggested that Sears had thus conceded the issue. On November 17, 2005, the Court issued a procedural order requesting that Sears inform the Court if it were indeed conceding the point. (# 157 at 2) Sears did not submit any pleading addressing the issue but did at the hearing on the summary judgment motion explain to the Court that it would not be opposing the defendant's motion regarding the statute of limitations on the 1965 transfer of the property.[4] Thus, the Court has allowed the defendant's motion regarding the statute of limitations on the purportedly fraudulent transfer of the property.

### 3. *The monetary transfer claims*

The defendant's motion regarding the monetary transfer claims consists of two parts–1. he asserts that only the Trustee, not Sears, is entitled to pursue the allegedly fraudulent monetary transfers made by Burgess to Anne pre-petition[5], and 2. he contends that the Trustee's claims regarding such transfers are governed by a four year statute of limitations and thus, any transfers made prior to December 15, 1998 (four years before the filing of the Trustee's complaint on December 15, 2002) cannot be pursued by the Trustee. (# 144 at 5). As will be explained below, the defendant is basically correct as to the former contention and incorrect as to the latter.

The defendant references bankruptcy law to support his position that only the Trustee and not Sears can go after the monetary transfers made by Burgess to Anne. Specifically, he cites to *In re Mi-Lor Corp.* for the proposition that "no creditor has individual avoidance rights after the petition filing. Bankruptcy being a collective proceeding for the benefit of all creditors, avoidance rights belong only to the estate representative; upon their exercise the property recovered becomes part of the bankruptcy estate." (# 144 at 5–6)(quoting *In re Mi-Lor Corp.*, 233 B.R. 608, 619 (Bankr.D.Mass.1999)(citing 11 U.S.C. § 541(a)(3))). In other words, the

---

Anne's could be considered sufficient repudiation.

4. Similarly, the Trustee did not address the issue in his papers since he will not be pursuing any claims that would be affected by the six year state statute of limitations having run on the fraudulent conveyance claim. That is, the Trustee has lodged claims for a resulting trust on the property for which the statute of limitations does not run until the trust has been repudiated, as explained above.

5. Sears and the Trustee are in agreement that Sears has the right to pursue claims regarding monetary transfers made by George to Anne post-petition (i.e., after December 15, 2000)(*See* # 159 at 8). Indeed, the Trustee is not seeking to recover post-petition transfers. Thus, as referenced herein, the monetary transfers are those that occurred pre-petition.

defendant's argument is that in the instant case, bankruptcy law is applicable and under such law, the Trustee, not any individual creditor, may pursue transferred property in order to restore it to the estate.

Not surprisingly, the Trustee agrees with the defendant's assessment while Sears disagrees wholeheartedly. The Trustee did not address the issue in his opposition brief, but, at the Court's request, did submit an additional memorandum of law in which he explains that his position is that the "Trustee has the exclusive right to pursue the fraudulent monetary transfer claims" from Burgess to Anne "pursuant to his 'strong arm' powers under Section 544(b)[6] of the Bankruptcy Code..." (# 159 at 1) According to the Trustee, Sears cannot go after such transfer claims unless it received permission from the bankruptcy court, that is, relief from the "automatic stay", a stay which is in place as a result of the bankruptcy filing. (# 159 at 6)

Sears, on the opposite end of the spectrum, asserts that Sears is the only entity that may pursue the fraudulently transferred funds although it posits that the Trustee may have the right to pursue transfer claims for a one-year period, from December 15, 1999 to December 15, 2000. (# 165 at 3) Sears relies on Sections 544 and 548 of the Bankruptcy Code to support its position that the Trustee may go after only those transfers made within one year prior to Burgess' bankruptcy petition. Specifically, Section 544 provides that "the trustee may avoid the transfer of an interest of the debtor in property...that is voidable under applicable law by a creditor holding an unsecured claim...." 11 U.S.C. § 544. "Applicable law" is understood here to be state law-that is, the Massachu-

setts Uniform Fraudulent Transfer Act ("UFTA"). *See, e.g., Sender v. Simon,* 84 F.3d 1299, 1304 (10 Cir.1996)(stating that the "trustee's powers under [section 544] are predicated on the non-bankruptcy law, usually state law, applicable to the transaction to be avoided."); *In re Dergance,* 218 B.R. 432, 434 (Bankr.N.D.Ill.1998)(stating that UFTA was "applicable law" under Section 544). And, Section 548 sets out, in relevant part, that

> [t]he trustee may avoid any transfer of an interest of the debtor in property...that was made or incurred *on or within one year before the date of the filing of the petition,* if the debtor voluntarily or involuntarily-(A) made such transfer...with actual intent to hinder, delay or defraud any entity to which the debtor was or became, on or after the date that such transfer was made...,indebted; or (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made..., or became insolvent as the result of such transfer.

Title 11 U.S.C. § 548(a)(1)(emphasis added).

Sears goes on to argue that while the Trustee may have the right to pursue fraudulent transfer claims for the one-year period set forth in Section 548, the Trustee has no additional power to go after any other transfers and that Sears, as a creditor, is the entity with the ability to assert a claim for damages and seek to recover a judgment by pursuing the fraudulent transfers, pursuant to Section 9 of the UFTA. That section provides that, "to the extent a transfer is voidable in an action by a creditor [under UFTA § 8(a)(1) ], the

---

**6.** In his papers, the Trustee refers at least once to Section 554, rather than 544. Clearly, this is typographical error, and the Court assumes that the Trustee meant to reference Section 544.

creditor may recover judgment for the value of the asset transferred...or the amount necessary to satisfy the creditor's claim, whichever is less." Mass. Gen. L. c. 109 § 9.

Thus, Sears appears to be making a distinction between avoidance, on the one hand, and a claim for damages, on the other hand. According to Sears, it has the right pursuant to Section 9 of the UFTA to go after the fraudulent transfers in order to recover a judgment, and the Trustee has the concurrent right pursuant to Sections 544 and 548 of the Bankruptcy Code to "avoid" the fraudulent transfers that took place within the requisite one-year time period. That is, it is Sears' contention that it may rely on state law to seek monetary damages from the defendants while at the same time the Trustee may use bankruptcy law to bring an avoidance action.

The Trustee, however, does not agree that a distinction should be drawn between avoidance of the fraudulent transfers and a claim for damages based on the fraudulent transfers. In other words, says the Trustee, the "statutory fraudulent transfer causes of action[ ] asserted by the Trustee...under M.G.L. ch. 109A and statutory authority at 11 U.S.C. 544(b), are identical causes of action...to those fraudulent transfer counts alleged by Sears." (# 159 at 8 n. 4) It is the Trustee's firm position that *only* the Trustee may pursue the fraudulent transfers, except in the circumstance where the Trustee fails to act as against the fraudulent transfers and the creditor receives court approval to seek recovery of the transfers, a circumstance that has not occurred in this case.[7] (# 159 at 6–7)

It is clear that Sears' position and the Trustee's stance (which is basically the same as the defendant's on this point) cannot be reconciled. One of them is right and one of them is not. The issue is thus whether state law and bankruptcy law can be utilized together in this case such that both Sears and the Trustee can maintain the same fraudulent transfer claims or whether bankruptcy law "trumps" state law such that only the Trustee may pursue the claims regarding the fraudulent transfers of the funds from Burgess to Anne.

In short, the Trustee is correct. It is well-established that creditors may not "vie with the bankruptcy trustee for the right to pursue fraudulent conveyance actions. To the contrary, the commencement of bankruptcy gives the trustee the right to pursue fraudulently conveyed assets *to the exclusion of all creditors.*" *Klingman v. Levinson,* 158 B.R. 109, 113 (N.D.Ill.1993)(emphasis added); *see also In re Bluestone,* 102 B.R. 103, 105 (Bankr.N.D.Ohio1989)(creditor "has no standing to seek avoidance of an alleged fraudulent transfer under § 548.").

Sears appears to have completely overlooked the fact that once the debtor filed for bankruptcy protection, an automatic stay was put in place to protect individual creditors from going after the debtor. *See generally* 11 U.S.C. § 362, the automatic stay provision. Sears makes much of the fact that there is case law to the effect that a trustee may not bring claims on behalf of creditors when the causes of action belong solely to the creditors. *See* # 148 at 7–8. However, such law does not change the situation here: without court approval, Sears cannot pursue an action against the debtor without violating the automatic

---

7. *Compare In re Pilavis,* 233 B.R. 1, 4 (Bankr. D.Mass.1999)(court gave creditor approval to pursue a fraudulent transfer action against the debtor based on the finding that the Trustee "failed to pursue the case" and because "the litigation presents no burden to the estate....").

stay. At this juncture, the fraudulent transfer claims belong solely to the Trustee.

Indeed, were Sears allowed to pursue its fraudulent transfer claims, it would put Burgess' other creditors at a distinct disadvantage. "The purpose of fraudulent conveyance law, whether state or federal, and of Section 548 is to prevent harm to creditors by a transfer of property from the debtor." *In re Murphy,* 331 B.R. 107, 124 (Bankr.S.D.N.Y.2005)(collecting cases). That is, the Trustee will go after the transfers for the benefit of the estate and all the creditors, whereas Sears obviously would be seeking the judgment only for itself. And, if Sears prevailed on its claims, it would be recovering money that rightfully belonged to the estate. Sears should not be allowed an "end-run" around the proper bankruptcy channels. The bottom line is that, despite Sears' attempts to draw a distinction between an avoidance claim and a claim for damages, the money sought by the Trustee and by Sears is the same money. Thus, the Trustee is the only party who may pursue the pre-petition fraudulent transfers, and the defendant's summary judgment motion has been allowed on this issue.[8]

■ The only remaining issue is whether the Trustee may pursue the fraudulent transfers back to 1998, as the defendant asserts, back to 1996, as the Trustee contends, or back only until 1999, as Sears argues. It is Sears' position that Section 548 of the Bankruptcy Code applies and that therefore, the Trustee may only go after those transfers made within one year prior to the petition; the Trustee says that Section 544 of the Bankruptcy Code is applicable and thus, he may go after trans-

fers made up to four years pre-petition. The defendant agrees that Section 544 governs but contends that the four year period dates back from the filing date of the Trustee's adversary complaint.

As set forth above, Section 548 clearly contains a one-year statute of limitations whereas Section 544 relies on "applicable law" which here is the UFTA. The UFTA provides that a claim for fraudulent transfer must be brought within four years after the transfer was made or the obligation was incurred, or within one year after the transfer or obligation was or could reasonably have been discovered. Mass. Gen. L. c. 109A § 10. Obviously, what must now be determined is the extent of the interplay between Sections 544 and 548.

The court in *In re Randy,* 189 B.R. 425 (Bankr.N.D.Ill.1995) addressed just this issue. The *Randy* court explained that:

> Since the UFTA is state law, the Trustee may reach its benefits in a federal bankruptcy case by using his avoiding powers under § 544(b) of the Code. The provisions of the UFTA essentially parallel § 548 of the Code. The only significant difference is that, under UFTA, the Trustee can recover property that was fraudulently transferred out of the estate more than one year before the petition date. Under § 548, the Trustee may only avoid a transfer that is "within one year before the date of the filing of the petition." 11 U.S.C. § 548(a). Causes of action for fraudulent conveyances can be brought under the UFTA within four years after the transfer was made.... Therefore, the Trustee must rely on [state] law if he is to recov-

---

8. This includes fraudulent transfers back to 1996, as will be discussed in detail below. Sears does have the right to go after monetary transfers that occurred prior to December 15, 1996 and those that occurred post-petition. The Trustee does not dispute Sears' right in this regard.

er...payments that were made earlier than one year before the bankruptcy petition was filed.

*Randy,* 189 B.R. at 443. *See also In re Foos,* 204 B.R. 545, 548 (Bankr.N.D.Ill. 1997) (stating that defendant's argument that "under § 548 the trustee may only avoid transfers made within one year before bankruptcy" was "correct" but stating that "argument is of no consequence".since trustee was relying on UFTA, not § 548).

Thus, in the case at bar, the Trustee may assert claims for fraudulent conveyances within four years after the transfers were made; he just must rely on Massachusetts law (i.e., UFTA) to do so. And, indeed, in Counts I and II of his complaint, he sets forth that he is indeed relying on UFTA.[9] In other words, Section 544 gives the Trustee the right to rely on state law to pursue fraudulent conveyance claims. Here, state law is UFTA and UFTA (Mass. Gen. L. c. 109A § 10) contains a four year statute of limitations which is thus the applicable statute of limitations. Section 544 and Section 548 are alternative sections; that is, Section 548 in no way "preempts" Section 544 and therefore, the Trustee may rely on Section 544, the result being that the statute of limitations in the instant case is four years.

The last question that must be resolved in connection with the motion for summary judgment is whether the four year period runs back from the date of the filing of the petition or from the date of the filing of the adversary complaint. The defendant asserts, with little to support his position,

that since the Trustee's complaint was filed on December 16, 2002[10], any transfers made prior to December 15, 1998 (i.e., four years earlier than the filing of the complaint) are time-barred. (# 144 at 5)

■ The Trustee, in contrast, relies on 11 U.S.C. §. 108 ("Section 108") to support his claim that the four year period runs back from the date that Burgess filed the bankruptcy petition, December 15, 2000, which means that the Trustee may pursue monetary transfer claims that occurred as early as December 15, 1996. (# 149 at 8) Section 108 provides, in pertinent part, that:

> (a) if applicable nonbankruptcy law...fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—
>
> (1) the end of such period...occurring on or after the commencement of the case; or
>
> (2) two years after the order for relief.

In the instant case, "applicable nonbankruptcy law" refers to state law, specifically Mass. Gen. L. c. 109A. An "order for relief" refers to the debtor's bankruptcy petition. *See* 11 U.S.C. § 301 ("The commencement of a voluntary [bankruptcy] case...constitutes an order for relief....").

Section 108(a) thus has three requirements: "First, the applicable nonbankruptcy law must 'fix a period within which the debtor may commence' the action.

---

**9.** Sears may attempt to make something of the fact that in his complaint, the Trustee sets forth that is he is proceeding under various Bankruptcy Code sections, including Section 548, but does not include Section 544. This fact is of little moment since the Trustee in his papers and during the hearing made it clear that he is indeed proceeding pursuant to Sec-

tion 544, as well as Section 548 and other Code sections.

**10.** The Trustee filed his complaint on December 16, 2002 because December 15, 2002, the deadline for filing, was a Sunday. Hereinafter, December 15, rather than December 16, will be used as the operative date.

Second, the debtor must file for bankruptcy before expiration of that period. Finally, the [trustee] must commence the action before expiration of the extension period." *In re AMS Realty, Inc.*, 114 B.R. 229, 232 (Bankr.C.D.Cal.1990).[11] In the case at bar, only two of the three requirements of Section 108(a) have been satisfied—Burgess filed for bankruptcy before the expiration of that statute of limitations[12], and the Trustee filed his complaint exactly two years after the order for relief. But, what has not been met here is that the debtor himself could have commenced a fraudulent transfer action, as required by § 108. *See generally Hoult v. Hoult*, 862 F.Supp. 644 (D.Mass.1994). Thus, despite the Trustee's arguments to the contrary, Section 108 is not applicable here.

It is well settled that:

> § 108(a) refers to pre-filing causes of action *belonging to the debtor* and not to a cause of action created by the Bankruptcy Code.... [A] fraudulent transfer action maintained by a debtor-in-possession [or a trustee] under 11 U.S.C. section 544(b) is clearly the creation of the Bankruptcy Code.

*In re Mahoney, Trocki & Associates, Inc.*, 111 B.R. 914, 920 (Bankr.S.D.Cal.1990) (citations omitted)(emphasis added).

In other words, Section 108 "by its express terms,...applies only to actions which the *debtor* could commence pre-petition. It is therefore inapplicable to the trustee's action under § 544(b), in which the trustee asserts a claim as a putative creditor." *In re Dry Wall Supply, Inc.*, 111 B.R. 933, 935 n. 2 (D.Colo.1990) (emphasis in original). Thus, it is clear that Section 108 does not apply to the instant case. Instead, the correct section to be utilized is 11 U.S.C. § 546 ("Section 546").

As one court aptly explained,

> It is only the avoidance powers afforded to the...trustee by section 544 that enable a debtor or trustee to bring fraudulent conveyance actions. Courts have, therefore, construed section 108 to be inapplicable to actions brought under section 544, leaving such actions subject only to the limitations set forth in section 546.

*In re Revco D.S., Inc.*, 118 B.R. 468, 499 (Bankr.N.D.Ohio1990); *see also In the Matter of Princeton–New York Investors, Inc.*, 219 B.R. 55, 59 (D.N.J.1998)("the two limitations periods in the Code relate to different causes of action: § 108(a) involves a trustee's actions brought on behalf of the debtor, whereas § 546(a) limits the time a trustee has to commence an avoidance action as representative of the estate."); *In re Colonial Realty Co.*, 168 B.R. 512, 517 (Bankr.D.Conn.1994)("When the trustee asserts an avoidance action under § 544(b) on behalf of creditors of the estate, the limitation period fixed by § 546(a) applies, not § 108(a), which ap-

---

**11.** The *AMS Realty* case stated that Section 108(a) can be utilized only by Chapter 11 trustees and debtors-in-possession, not by Chapter 7 trustees, like the one in the case at bar. *See* 114 B.R. 229, 232 (Bkrtcy.C.D.Cal. 1990). However, such language has since been discredited as a typographical error or oversight. *See Mishkin v. Ageloff*, 1998 WL 651065, *5 (S.D.N.Y. Sept. 23, 1998)("this language from *AMS Realty* was a typographical error or otherwise unintentional. Section 108 refers to 'the trustee' without any qualifications.").

**12.** What makes this case confusing is that there were numerous monetary transfer claims that have been alleged to be fraudulent. Therefore, there are really numerous statutes of limitations in operation. That is, Burgess filed for bankruptcy on December 15, 2000, within the statute of limitations for some of the transfers and outside the statute of limitations for others.

plies to actions asserted on behalf of the debtor.").

█ Thus, since § 546(a) is the operative statute, it is necessary to set forth the relevant portions of that law: "An action or proceeding under section 544, 545, 547, 548 or 553 of this title may not be commenced after the earlier of-(1) the later of-(A) 2 years after the entry of the order for relief; or (B) 1 year after the appointment or election of the first trustee....; or (2) the time the case is closed or dismissed." Title 11 U.S.C. § 546(a).

Certainly, the wording of this statute is somewhat confusing. At its core, "it requires the action be brought within the earlier of two years after the trustee is appointed or before the close of the bankruptcy proceeding." *In re Martin*, 142 B.R. 260, 266 (Bankr.N.D.Ill.1992). In the case at bar, the Trustee was appointed on December 15, 2000, the same date that Burgess filed his bankruptcy petition. Thus, any fraudulent transfer actions must have been brought by December 15, 2002 in order to have been timely filed. The Trustee filed his adversary proceeding within this time frame. This conclusion does not, however, end the inquiry.

> There is a two-part analysis for determining whether an action brought under 11 U.S.C. § 544(b) is timely. The applicable state statute of limitations is only relevant to the first part of the test, which requires the action to be maintainable under the state statute of limitations as of the commencement of the bankruptcy proceeding. Once the bankruptcy petition is filed, 11 U.S.C. § 546 governs the time for bringing the action, and it requires the action be brought within the earlier of two years after the trustee is appointed or before the close of the bankruptcy proceeding. Under this analysis, it is immaterial if the state

limitations period accrues during the pendency of the bankruptcy case.

*In re Martin*, 142 B.R. at 265. *See also* 4 Collier on Bankruptcy ¶ 546.02[1][b] ("If the state law limitations period governing a fraudulent transfer action has not expired at the commencement of a bankruptcy case, the trustee may bring the action pursuant to section 544(b), provided that it is commenced within the section 546(a) limitations period.").

Therefore, there is a two-part analysis that must be undertaken. First, the fraudulent transfer actions must have been maintainable as of December 15, 2000, the date of the filing of the bankruptcy proceeding. Since, as discussed above, there is a four year statute of limitations, any transfers made prior to December 15, 1996 could not be sued upon since the statute would already have run on those transfers. For all transfers made on or after December 15, 1996, the Trustee would have until December 15, 2002 to bring suit, pursuant to the two-year "extension" provided for in Section 546. In other words, "so long as the statute of limitations has not run at the filing of the petition, the trustee may then utilize the provisions of § 546(a)." *In re Mahoney*, 111 B.R. at 920; Fraudulent Transfers: Applications and Implications § 4:21 (2005) ("the fraudulent transfer action must be allowable at the time the bankruptcy petition has been filed.").

In sum, to resolve the question of whether the Trustee has the right to pursue transfers back to 1998 or 1996, the answer is that he may go after transfers back to 1996, based upon Section 546. Although Section 546 does not explicitly state that the operative date is the date of the filing of the bankruptcy proceeding, the case law makes clear that the action must have been maintainable as of the petition date; if not, then the Trustee may not act upon it. *See, e.g., In re Mahoney*, 111

B.R. at 919 ("The California statute of limitations [on a fraudulent transfer claim] can be given effect by reaching back three[13] years from the date of the filing of the petition to determine whether the alleged transfer had taken place within that time frame."); *In re Florida West Gateway, Inc.*, 182 B.R. 595, 598 (Bankr. S.D.Fla.1995) (holding that § 546 applied because transfer at issue occurred two years prior to the commencement of the bankruptcy case, well within the four year statute of limitations for a fraudulent transfer claim).

As discussed above, Section 546 applies when the Trustee is acting as a putative creditor. Thus, the purpose of Section 546 is to ensure "that at the time of the filing of the petition the trustee will have no greater rights than those accorded by the state law to a creditor holding a potential claim." *In re Mahoney*, 111 B.R. at 919. Therefore, in the instant case, where there are numerous allegedly fraudulent transfers, the Trustee may pursue only those which were maintainable as of the date of the filing of the bankruptcy petition—i.e., those that occurred on or after December 15, 1996 which is four years before the filing of the petition.[14]

In conclusion, Sections 544 and 546 allows the Trustee to "act" as a creditor and bring suit upon any fraudulent transfer claims that were maintainable as of the date of the filing of the bankruptcy proceeding, as long as he did so within two years after his appointment. Thus, the Trustee, although he relied on the wrong bankruptcy code section to support his argument, is ultimately correct, and he may pursue monetary transfer claims dating from December 15, 1996 to December 15, 2000.[15]

## IV. CONCLUSION

In conclusion, the defendant's motion for summary judgment was allowed on the claim regarding the statute of limitations on the transfer of the property and was allowed to the extent that the Trustee has the exclusive right to pursue monetary transfers claims for transfers that occurred from December 15, 1996 to December 15, 2000. Sears may not pursue transfer claims after the December 15, 1996 but may go after claims for transfers occurring prior to December 15, 1996 and those occurring post-petition. The summary judgment motion was denied on the resulting trust claims and was denied to the extent that the motion sought to limit the Trustee's fraudulent transfer claims back only to December 15, 1998.

---

**13.** The court in *In re Mahoney* relied upon a three year statute of limitations since that was the applicable statute of limitations for fraudulent transfer claims in California. In our case, the statute of limitations is four years, as discussed at length above.

**14.** As mentioned above, there is no dispute here that the Trustee's action was commenced prior to the expiration of two years after his appointment.

**15.** In the papers, there is discussion of whether the UFTA or the MFCA would apply to certain transfers. As far as the summary judgment motion is concerned, no such decision is necessary since all of the transfer claims to be pursued by the Trustee occurred after the effective date of the UFTA–October 6, 1996. That is, the Trustee has the right to go after transfers made on or after December 15, 1996, well after the October 6, 1996 effective date, so all of those transfers are governed by the UFTA.