**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4350-13T4

MOTORWORLD, INC.,

      Plaintiff-Respondent/
      Cross-Appellant,

    v.

WILLIAM BENKENDORF, GUDRUN
BENKENDORF, and BENKS LAND
SERVICES, INC.,

      Defendants-Appellants/
      Cross-Respondents.

_____

CATHERINE E. YOUNGMAN, Chapter 7
Trustee for Carole Salkind,

      Plaintiff-Respondent/
      Cross-Appellant,

    v.

WILLIAM BENKENDORF, GUDRUN
BENKENDORF, and BENKS LAND
SERVICES, INC.

      Defendants-Appellants/
      Cross-Respondents.

_____

Argued September 22, 2015 — Decided December 17, 2015
Remanded by Supreme Court March 30, 2017
Resubmitted April 17, 2017 — Decided May 30, 2017

Before Judges Fisher, Espinosa and Rothstadt.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket Nos. L-1947-11 and L-2038-12.

Bressler, Amery & Ross, attorneys for appellants/cross-respondents (Diana C. Manning and Benjamin J. DiLorenzo, on the brief).

Forman Holt Eliades & Youngman LLC, attorneys for respondents/cross-appellants (Andrew J. Karas and Joseph M. Cerra, on the brief).

PER CURIAM

In our previous decision in this appeal, we determined that, when releasing a debt, a creditor — Motorworld, Inc., a corporation owned by a single stockholder, Carole Salkind — received reasonably equivalent value when the parties who received the benefit of the release — defendants William and Gudrun Benkendorf, and defendant Benks Land Services, Inc. (collectively, Benks) — also released their claims against Fox Development, Inc., and Giant Associates, Inc., two corporations of which Carole Salkind was the sole stockholder.[1] In other words, because Benks gave something of reasonably equivalent value to two of Salkind's solely-owned corporations, we determined that the release of Benks' debt to a third solely-owned corporation could not constitute a fraudulent conveyance. The Supreme Court rejected our assessment, holding that we "improperly ignored" Motorworld's corporate form and

---

[1] Carole Salkind, in fact, solely owned nineteen such entities.

erroneously treated Motorworld and its sole shareholder as "interchangeable" for purposes of N.J.S.A. 25:2-27(a). Motorworld, Inc. v. Benkendorf, __ N.J. __, __, __ (2017) (slip op. at 3, 26). In reversing, the Court mandated our consideration of three issues we previously found unnecessary to reach. The first and second issues concern "the estoppel and statute of limitations defenses asserted by defendants," and the third concerns "defendants' challenge to the trial court's assessment of interest and penalties." Id. at __ (slip op. at 27). We consider these three arguments separately.

I

In the first of these points, Benks argues that Salkind's bankruptcy trustee, who brought these two suits on behalf of Motorworld, should be estopped from enforcing the promissory note because Benks had relied on the note's cancellation for more than three years and, in the meantime, "lost the ability to collect the monies owed" by Fox and Giant, resulting in either Motorworld, Salkind, or Salkind's creditors, receiving "a significant windfall."

Promissory estoppel requires a showing of "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and

substantial detriment." Toll Bros, Inc. v. Bd. of Chosen Freeholders of the Cnty. Of Burlington, 194 N.J. 223, 253 (2008). At the conclusion of a bench trial, the judge made findings that Benks did not reasonably rely on the mutual exchange of the waiver of claims because, during his testimony, William Benkendorf expressed that he did not anticipate having any success if he pursued Benks' claim against Fox and Giant. That finding, to which we must defer, Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 483-84 (1974); Stephenson v. Spiegle, 429 N.J. Super. 378, 382 (App. Div. 2013), is fatal to Benks' estoppel argument. Moreover, we view the Supreme Court's opinion — in which the corporate status of Motorworld was exalted over the equities that heavily favored Benks' position — as requiring our rejection of this alternative equitable basis for sustaining the release the Supreme Court has now declared to be a fraudulent conveyance.

II

We also reject Benks' statute of limitations argument. N.J.S.A. 25:2-31(b) requires that fraudulent conveyance claims be commenced no later than "four years after the transfer was made or the obligation was incurred." Here, the release in question was executed on August 8, 2008, and the bankruptcy trustee's suit, which sought avoidance of the release, was filed on August 8,

2012.[2] Notwithstanding the timeliness of the action when viewed solely in light of N.J.S.A. 25:2-31(b), Benks argues the United States Bankruptcy Code requires a different outcome.

Benks argues the time for commencing the action was abbreviated by 11 U.S.C.A. § 546, which declares, through wording recognized to be "somewhat confusing," Sears Petroleum & Transp. Corp. v. Burgess Constr. Servs., 417 F. Supp. 2d 212, 225 (D. Mass. 2006) — a sentiment with which we would concur — that an action commenced by a trustee pursuant to its "avoiding powers" "may not be commenced after the earlier of . . . (1) the later of . . . (A) 2 years after the entry of the order for relief; or (B) 1 year after the appointment or election of the first trustee . . .; or (2) the time the case is closed or dismissed." In essence, this statute, which permits actions by trustees in the exercise of their "avoiding powers," requires "the action be brought within the earlier of two years after the trustee is appointed or before the close of the bankruptcy proceeding." In re Martin, 142 B.R. 260, 265 (Bankr. N.D. Ill. 1992). Stated another way, "[i]f the state law limitations period governing a fraudulent transfer action has not expired at the commencement of a bankruptcy case, the trustee may bring the action pursuant to

_____

[2] The trustee's earlier action, which sought to recover the debt owed by Benks to Motorworld, was commenced on July 6, 2011.

[11 U.S.C.A. § 544(b)], provided that it is commenced within [11 U.S.C.A. § 546(a)] limitations period." 5 Collier on Bankruptcy ¶ 546.02 (2014). Consequently, Benks argues this fraudulent conveyance action is time-barred because it was not filed within two years of the commencement of Carole Salkind's bankruptcy action, which was filed on June 29, 2009.

In response, the bankruptcy trustee argues she timely filed the two actions — one to recover on Benks' debt to Motorworld and the other to set aside the release given by Motorworld to Benks — because she had the authority granted by bankruptcy law in two separate ways. First, a bankruptcy estate was created when Carole Salkind filed her voluntary bankruptcy petition; that bankruptcy estate included "all legal and equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C.A. § 541(a)(1), including "tangible or intangible property, causes of action . . . and all other forms of property," United States v. Whiting Pools, Inc., 462 U.S. 198, 205 n.9, 103 S. Ct. 2309, 2313 n.9, 76 L. Ed. 2d 515, 522 n.9 (1983). See generally Westmoreland Human Opportunities, Inc. v. Walsh, 246 F.3d 233, 241-42 (3d Cir. 2001).

Second, a trustee acquires causes of action a debtor could never bring but are permitted because the trustee is also viewed as a fiduciary for the benefit of creditors. 11 U.S.C.A. § 544(b).

In this regard, a trustee may bring a state cause of action to recover on the estate's behalf if at least one creditor of the estate possessed the right to bring the action prior to the debtor's bankruptcy filing. Ibid. In short, a trustee may commence an action on behalf of any holder of an allowable unsecured claim against the debtor's estate.

The trustee claims she possessed the right to commence this action pursuant to the first reservoir of rights — the right to pursue any claim the debtor could also have commenced but for the bankruptcy filing. The trustee argues she acted on behalf of the estate of Carole Salkind and, derivatively, in Carole Salkind's capacity as the sole shareholder of Motorworld, in seeking relief in both actions against Benks. That is, the action was based on the trustee's right to pursue any cause of action possessed by the debtor. And, although it is true that Motorworld isn't a debtor in bankruptcy, the trustee was authorized to commence an action on behalf of Motorworld's sole shareholder, who is the debtor in bankruptcy.[3]

---

[3] The trustee acknowledges that "[w]hile the assets of the underlying corporation do not become part of the debtor's estate, the trustee acquires the debtor's equitable interest in the corporation, and thus controls the assets of the corporation at the exclusion of the debtor." In other words, though state law as now interpreted in this context by the Supreme Court, warrants strict adherence to the corporate form in determining the

So viewed, the timeliness of the trustee's lawsuits here were governed by 11 U.S.C.A. § 108(a), which looks to, among other things irrelevant here, the time fixed by "applicable nonbankruptcy law" and allows the trustee to commence the action "only before the later of . . . (1) the end of such period, . . .; or (2) two years after the order for relief." The nonbankruptcy law applicable here is the four-year time-bar set forth in N.J.S.A. 25:2-31(b). And, as noted earlier, the action filed by the trustee on behalf of Motorworld to set aside the release was filed on the fourth anniversary of the day the release was executed; that makes the action timely and requires rejection of Benks' argument.[4]

III

The trial judge, on the basis of the findings he made, entered judgment in favor of Motorworld and against Benks in the amount of $1,410,745.51. The judge provided no explanation for so quantifying the award and appears to have merely accepted the calculations provided by the trustee's attorney as to the amount

---

sufficiency of the trustee's fraudulent conveyance action, Motorworld's corporate status has little meaning when considering the trustee's right to commence the action.

[4] We need not decide whether a claim brought by way of the second reservoir of rights would be time-barred.

due. Those calculations included interest on the $600,000 principal amount of the note, at the rate of twenty-four percent since the default on March 1, 2009, as well as late payment penalties at the rate of ten percent.

Perhaps, had the judge found — as the trustee argued — that the release was inauthentic, there would be no cause to second guess this award. But the judge rejected the trustee's arguments about the legitimacy or dating of the release, and concluded that Morris Salkind, who operated Motorworld and the other corporations, actually intended to release the debt. That being so, Benks' arguments that the imposition of the entire amount of interest to which the creditor could have possibly be entitled, together with all possible penalties, should be reconsidered. In other words, the judge's award of compensatory damages was no greater than it would have been if the release were found to be a sham or fabrication.

It seems clear from the judge's findings that he believed the parties to the debt fully intended to release the debt. Until the trustee alleged and proved that the release, by operation of law, could not be sustained, none of the parties to the transaction actually believed Benks owed Motorworld anything. We, thus, remand to the trial judge to reconsider the amount of the judgment in light of this circumstance. We also direct the trial judge to

reconsider whether the principal amount to which the trustee is entitled should be $500,000 — the amount lent by Carole Salkind to Motorworld, which lent it to Benks[5] — or whether there are facts that would support a finding that the principal amount due was the $600,000 figure contained in the promissory note.

For all these reasons, we remand the matter to the trial court for reconsideration of the amount of damages awarded. Nothing else before us as a consequence of the Supreme Court's remand requires further consideration or intervention.

Remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5] In other words, the facts found by the judge strongly called into question whether Benks was lent more than $500,000. Motorworld had no assets or property until Carole Salkind lent it $500,000 for the purpose of making the loan to Benks. That begs the question why the note called for the repayment of $600,000.

A-4350-13T4