Filed 9/19/22  Ehren Jordan Wine Cellars v. Bello CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| EHREN JORDAN WINE CELLARS, LLC,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL RU BELLO,<br><br>        Defendant and Appellant. | A163720<br><br>(Napa County Super. Ct. No. 19CV000681) |

Defendant Michael Ru Bello was the sole shareholder, sole director, and president of Walldesign, Inc. (Walldesign).  Bello issued checks from a Walldesign account to pay for personal expenses, including services provided by plaintiff Ehren Jordan Wine Cellars, LLC (Ehren) to Bello for his family winery.  After Walldesign filed for bankruptcy, the Official Committee of Unsecured Creditors (Committee) commenced an adversary proceeding against Ehren to recover those payments as fraudulent transfers.  The bankruptcy court entered judgment against Ehren for $320,482.96.

Ehren then sued Bello in state court asserting causes of action for intentional misrepresentation, concealment, and unjust enrichment.  Bello filed a motion in limine to dismiss the action, arguing that the bankruptcy court had original and exclusive jurisdiction of such disputes.  The trial court

denied the motion. The matter proceeded to trial, where the jury found in favor of Ehren on its three claims and awarded Ehren $320,482 in damages.

Bello now appeals the denial of his motion in limine and the subsequent judgment against him, arguing that the trial court lacked subject matter jurisdiction to hear the case. We affirm.

## BACKGROUND

### A. *The Parties*

Bello served as the sole shareholder, director, and president of Walldesign, a California corporation that installed drywall, acoustical material, and plaster for construction projects. Walldesign maintained a primary bank account at Comerica Bank. In 2002, Bello opened a different account in Walldesign's name at Preferred Bank. This secondary account was funded with rebates and refunds Walldesign received from suppliers for unused products or materials. Bello apparently directed these suppliers to issue checks for rebates and refunds (instead of deducting the difference from Walldesign's invoices), and then deposited the checks into the secondary account.

Bello used the funds in this secondary Walldesign account to pay for various personal expenses, including expenses related to his family winery, horseracing stable, casino bills, and credit card charges. Bello paid nearly $8 million to roughly 130 individuals or entities from this account. (*In re Walldesign, Inc.* (2017) 872 F.3d 954, 960 (*Walldesign, Inc.*).) Ehren was one such entity. From 2007 to 2010, Bello issued checks totaling $212,114.05 to

2

Ehren[1] for wine production services related to Bello's family winery. Each of these checks bore the name "WALLDESIGN INCORPORATED."

## B. *Bankruptcy Proceedings*

Walldesign experienced significant financial decline over the next several years and in 2012, Walldesign filed a Chapter 11 bankruptcy petition. The Committee subsequently brought 96 separate adversary proceedings to recover payments Bello made from the secondary Walldesign account as fraudulent transfers subject to turnover pursuant to title 11 of the United States Code[2] sections 544(b) and 550(a).[3] (*Walldesign, Inc., supra*, 872 F.3d at p. 960.) In 2013, the Committee filed an adversary proceeding against Ehren.[4] In 2016, the bankruptcy court entered judgment against Ehren for $320,482.96 ($212,114.05 principal and $108,368.91 prejudgment interest) plus any postjudgment interest.

---

[1] These checks were made payable to Ehren, as well as its fictitious business name "Faila" and its winemaker David Ehren Jordan. We refer to these collectively as "Ehren" in our recitation of the bankruptcy proceedings.

[2] Further undesignated section references are to title 11 of the United States Code.

[3] Section 544(b) provides that a bankruptcy trustee "may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." Section 550(a) provides, in relevant part, that the trustee may recover transferred property from the "initial transferee" to the extent a transfer is avoided under section 544.

[4] The trustee of the liquidation trust established by Walldesign's confirmed Chapter 11 plan subsequently succeeded the Committee as the real party in interest.

## C. *Ehren's State Court Action*

In 2019, Ehren filed a complaint in Napa County Superior Court against Bello[5] that included causes of action for (1) intentional misrepresentation, (2) concealment, and (3) unjust enrichment. It alleged Bello had misrepresented that he would pay for Ehren's services, and concealed that he had paid Ehren using funds improperly diverted from Walldesign's creditors in a secret account.

A few weeks before trial, Bello filed a motion in limine to dismiss the action on the ground that the bankruptcy court had original and exclusive jurisdiction of such disputes. He argued that Ehren's claims were barred under section 544(b), which affords the bankruptcy trustee the exclusive right to pursue actions to avoid fraudulent transfers. The trial court denied the motion.

The matter proceeded to jury trial in August 2021. The jury found in favor of Ehren on each of its three causes of action. It awarded Ehren $320,482 in damages on the concealment claim. Judgment was entered on September 3, 2021. This appeal followed.

## DISCUSSION

In this appeal, Bello challenges the denial of his motion in limine and judgment following the jury verdict on the ground that the trial court lacked subject matter jurisdiction to hear the case. Before turning to the merits of this argument, however, we address Ehren's preliminary response that the motion in limine was procedurally improper.

---

[5] Ehren also sued Bello's son, but those claims were subsequently dismissed.

4

## I. Motion in Limine for Lack of Subject Matter Jurisdiction

Ehren contends that Bello's motion in limine was procedurally improper because such motions should only be used to exclude evidence that could be objected to at trial. As a preliminary matter, it is unclear whether Ehren forfeited this objection by failing to raise it in the trial court below. (See *Mangano v. Verity, Inc.* (2009) 179 Cal.App.4th 217, 221 [defendant forfeited claim on motion in limine ruling for failure to oppose].) The record on appeal does not include a written opposition or a transcript of the court proceedings on the motion.

Even if Ehren preserved this argument, we do not find it persuasive. We agree that motions in limine "are designed to facilitate the management of a case, generally by deciding difficult evidentiary issues in advance of trial." (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1593.) A motion in limine, however, can also function as "an objection to any and all evidence" on the grounds that the pleadings "were fatally defective and had failed to state a cause of action." (*Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 27.) In these circumstances, the motion can operate as a general demurrer or motion on the pleadings. (*Ibid.*) Entertaining such a "nontraditional" motion in limine, as the trial court did here, falls within the court's "inherent equity, supervisory and administrative powers, as well as inherent power to control litigation and conserve judicial resources." (*Amtower*, at p. 1593; *Lucas v. County of Los Angeles* (1996) 47 Cal.App.4th 277, 284.) We have, however, cautioned trial courts "to be wary when choosing to decide an in limine motion that, no matter how captioned, functions as a nonstatutory motion for judgment on the pleadings, particularly when the motion is filed on the eve of trial" because under

5

certain circumstances, it can be "a recipe for reversal." (*Tung v. Chicago Title Co.* (2021) 63 Cal.App.5th 734, 740.)

We are not persuaded that the trial court's consideration of Bello's motion constituted an abuse of discretion here. Ehren relies on *McMillin Companies, LLC v. American Safety Indemnity* (2015) 233 Cal.App.4th 518, which reversed an order granting motions in limine to preclude certain evidence and argument because in so doing, the trial court essentially granted summary adjudication on an element of plaintiff's claim and nonsuit on the issue of damages, without requiring the statutory procedural protections associated with summary judgment and nonsuit proceedings. (*Id.* at pp. 553, 541.) Applying these summary judgment and nonsuit standards, *McMillin* concluded that the trial court had erred in granting the motions and precluding the parties from trying and proving their respective case and defense. (*Ibid.*) Here, unlike *McMillin*, Ehren offers no argument or authority that the consideration of Bello's motion led to a prejudicial deprivation of procedural protections or standards. We see no basis for such an assertion, particularly given that "[t]he lack of subject matter jurisdiction cannot be waived and may be raised at any time, even for the first time on appeal." (*Alliance for California Business v. State Air Resources Bd.* (2018) 23 Cal.App.5th 1050, 1060.)

## II. Subject Matter Jurisdiction

We now turn to the merits of Bello's argument that the trial court erred in denying his motion in limine and entering judgment because it lacked subject matter jurisdiction to hear the case. We ordinarily review a motion in limine ruling for abuse of discretion, but when the motion "strays beyond its traditional confines and results in the entire elimination of a cause of action

6

or a defense, we treat it as a demurrer to the evidence and review the motion de novo[.]" (*County of Glenn v. Foley* (2012) 212 Cal.App.4th 393, 398.)

"The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." (*Celotex Corp. v. Edwards* (1995) 514 U.S. 300, 307.) Title 28 of the United States Code section 1334(a) provides that "the district courts shall have original and exclusive jurisdiction of all cases under title 11." District courts also have original but not exclusive jurisdiction of "all civil proceedings arising under title 11, or arising in or related to cases under title 11." (28 U.S.C. § 1334(b).) "The district courts may, in turn, refer 'any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . to the bankruptcy judges for the district." (*Celotex*, at p. 308, quoting 28 U.S.C. § 157(a).)

Here, Bello argues that the claims raised by Ehren in the state court action fall under the original and exclusive jurisdiction of the district and bankruptcy courts pursuant to the provisions of sections 544(b) and 550(a). We address each section in turn.

## A. *Section 544(b)*

Section 544(b) permits the trustee in a Chapter 11 bankruptcy proceeding to recover fraudulent conveyances in order to restore that property to the debtor's estate. (*In re Agricultural Research and Technology Group, Inc.* (9th Cir. 1990) 916 F.2d 528.) It states that the trustee may "avoid" any such transfer "that is voidable under applicable law by a creditor holding an unsecured claim . . . ." (§ 544(b)(1).) In other words, section 544(b) "allows the bankruptcy trustee to step into the shoes of a creditor for the purpose of asserting causes of action under state fraudulent conveyance acts for the benefit of all creditors[.]" (*In re Pacific Gas & Electric Co.* (Bankr. N.D.Cal. 2002) 281 B.R. 1, 14.) Moreover, because a fraudulent conveyance

claim to recover assets of the bankrupt belongs to the estate, the trustee has *exclusive standing* to bring such claims and "divests all creditors of the power to bring the claim." (*Ahcom, Ltd. v. Smeding* (2010) 623 F.3d 1248, 1250.) Courts have explained that the equitable distribution of a bankruptcy estate is dependent upon this principle: "[a]ny other result would produce near anarchy where the only discernible organizing principle would be first-come-first-served." (*In re Pacific Gas & Electric Co.*, at p. 14, italics omitted.)

Bello argues that the bankruptcy trustee's authority to pursue avoidance actions under section 544(b) precludes Ehren's state court claims. That argument, however, incorrectly assumes that Ehren is a creditor of Walldesign (or its estate). Here, Ehren alleged that it had an agreement with Bello himself—*not* Walldesign—to provide services to Bello's family winery. Bello offers no evidence that Walldesign had any obligation to pay for these services. Indeed, the bankruptcy court rejected a creditor claim by another entity in Ehren's position. (*In re Walldesign, Inc.* (Bankr. 9th Cir. Aug. 2, 2018, No. CC-17-1290) 2018 Bankr. Lexis 2283.) Like Ehren, wine barrel company Francois Freres was paid by Bello for barrels used at the family vineyard with a check from Walldesign's account. (*Id.* at p. \*2.) After the bankruptcy court entered judgment against Freres to recover the fraudulent transfer, Freres filed a general unsecured claim against Walldesign for the same amount. (*Id.* at p. \*3.) *In re Walldesign, Inc.* determined that Freres' creditor claim was unenforceable because Freres had provided nothing of value to Walldesign in exchange for the payment: "Simply put, the French oak barrels went to [Bello Family Vineyards], not [Walldesign], and thus there was no underlying debt." (*Id.* at pp. \*10, \*13.) Nor had Freres provided any value to the bankruptcy estate, as it was returning fraudulently transferred monies over which it had no claim. (*Ibid.*) So too here.

The section 544(b) authorities cited by Bello are thus inapposite because, unlike this case, each involved creditors of the debtor or the debtor's estate. *In re Tessmer* (Bankr. M.D.Ga. 2005) 329 B.R. 776 (*Tessmer*) involved a debtor who had killed her husband and, after being convicted of murder, transferred a property interest to her parents. (*Id.* at p. 778.) The victim's mother filed a wrongful death action against the debtor in state court. (*Ibid.*) The debtor subsequently filed for Chapter 7 bankruptcy and shortly thereafter, her mother-in-law filed a fraudulent conveyance action against the debtor's parents. (*Ibid.*) *Tessmer* concluded that because the mother-in-law was a creditor based on her pending action against the debtor's parents, her action was barred under section 544(b) as an attempt to circumvent the bankruptcy proceedings and infringe on the trustee's exclusive right to pursue avoidance actions. (*Tessmer*, at pp. 779–780.)

Similarly, in *Sears Petroleum & Transportation Corp. v. Burgess Construction Services* (D. Mass. 2006) 417 F.Supp.2d 212 (*Sears*), Sears filed an action against Burgess Construction and Gregory Burgess after they had failed to pay a $562,912.35 judgment against them, seeking to recover allegedly fraudulent conveyances of Burgess Construction funds made by Burgess to his wife Anne. (*Id.* at pp. 214–215.) Burgess Construction subsequently filed for Chapter 7 bankruptcy. (*Ibid.*) The district court concluded that Sears, a creditor, could not maintain the same fraudulent transfer claims as the trustee under section 544(b). (*Sears*, at p. 221.) It reasoned that if Sears prevailed on its claims, it would be recovering money that rightfully belonged to the estate and would constitute an impermissible " 'end-run' around the proper bankruptcy channels." (*Id.* at p. 222.)

Here, unlike *Tessmer* and *Sears*, there is nothing to suggest that Ehren is a creditor of Walldesign or its estate. Section 544(b) does not preclude a non-creditor like Ehren from pursuing its state court claims against Bello.

**B. *Section 550(a)***

Section 550 "dictates who must reimburse the trustee and, through the trustee, the debtor's creditors, for those fraudulent and 'avoided' transfers." (*Walldesign, Inc., supra*, 872 F.3d at p. 960.) Section 550(a) provides that a trustee may recover a transfer avoided under section 554 from an "initial transferee." The Bankruptcy Code "draws a critical distinction between initial and subsequent transferees when it comes to the recovery of fraudulent transfers." (*Walldesign, Inc.*, at pp. 961–962.) Initial transferees are "strictly liable" to the trustee for such transfers. (*Id.* at p. 959.) Subsequent transferees, however, may avail themselves of the "safe-harbor" provision of section 550(b)(1), which precludes recovery where a subsequent transferee accepted the property "for value," "in good faith," and "without knowledge of the voidability of the transfer avoided." (*Walldesign, Inc.*, at p. 959.)

Here, Bello argues that Ehren's status as an "initial transferee" precludes its state court action. His preliminary contention that Ehren is an "initial transferee" under section 550(a) is uncontroverted. In *Walldesign, Inc., supra*, 872 F.3d at pages 961–962, other entities in Ehren's position were determined to be "initial transferees" of fraudulent transfers from Walldesign's secondary account. For example, interior design firm owner Lisa Henry was paid by Bello for design services on a building he owned with checks from that Walldesign account. (*Id.* at p. 961.) Similarly, the Bureshes sold property to another Bello-controlled entity (RU Investments) but received checks from Walldesign's secondary account. (*Ibid.*) The Committee

filed adversary proceedings to recover these payments. (*Ibid*.) *Walldesign, Inc.* concluded that the Bureshes and Henry qualified as "initial transferees" because each transfer "was a classic 'one-step transaction'—with funds moving from Walldesign (the transferor) to the Bureshes and Ms. Henry (the initial transferees), on behalf of Bello (the party for whose benefit the transfers were made)." (*Id.* at p. 967.) It concluded that this outcome was fair and consistent with the policy concerns underlying section 550, as the Bureshes and Henry received checks bearing the name "WALLDESIGN INCORPORATED," "providing at least *some* indication of an irregularity in the payments." (*Walldesign*, *Inc.*, at p. 968.) The same is true here, as Ehren was paid with Walldesign funds and each check bore the name "WALLDESIGN INCORPORATED."

We disagree, however, with Bello's ultimate assertion that Ehren's status as an *initial transferee* means that it was a *creditor*. An initial transferee *can* be a creditor of the debtor or bankruptcy estate. Pursuant to section 502(h), a transferee may make a claim against the bankruptcy estate after the recovery of property under section 550. But Bello provides no authority to support his underlying assumption that an initial transferee *must* be a creditor. As explained above, there is no basis to conclude that Ehren is a creditor of Walldesign or the estate. There is nothing to show that Walldesign owed any debt to Ehren. Walldesign's estate obtained a judgment requiring Ehren to return fraudulently transferred monies over which it had no claim. (*In re Walldesign, Inc.*, *supra*, 2018 Bankr. Lexis 2283 at p. *13.) Because Ehren was *not* a creditor of Walldesign, neither section 544(b) nor section 550(a) precluded Ehren from pursuing its state court claims against Bello.

11

In sum, we conclude that the trial court did not err in denying Bello's motion in limine and reject Bello's challenge to the judgment and entry of judgment for the same reasons.

## DISPOSITION

The September 3, 2021 judgment is affirmed. Ehren is entitled to its costs on appeal.

_____
Mayfield, J.*

We concur:

_____
Richman, Acting P.J.

_____
Miller, J.

*Ehren Jordan Wine Cellars, LLC v. Bello et al.* (A163720)

* Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13